AO 91 (Rev. 5/85) Criminal Complaint

E-FILED
Wednesday, 17 August, 2005  08:54:36 AM
Clerk, U.S. District Court, ILCD

# United States District Court

CENTRAL **DISTRICT OF** ILLINOIS

**FILED**

AUG 1 6 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL.

UNITED STATES OF AMERICA

**V.**

LANCE A. OLIVER

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER:  05- 7228

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief.  On or about _____August 7, 2005_____ in _____Kankakee_____ county, in the

_____Central_____ District of _____Illinois_____ defendant(s) did, (Track Statutory Language of Offense)

knowingly possess 50 or more grams of cocaine base ("crack"), a Schedule II Controlled Substance, with the intent to distribute it,

in violation of Title_____21_____ United States Code, Section(s) _____841(a)(1) and (b)(1)(B)_____ .

I further state that I am a(n)_____Special Agent, KAMEG_____ and that this complaint is based on the following

Official Title

facts:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof:     ☒ Yes     ☐ No

S/A s/ Sean Prophet

Signature of Complainant

Sworn to before me and subscribed in my presence,

08-15-2005                                    at                Urbana, Illinois

Date                                                            City and State

David G. Bernthal
United States Magistrate Judge

s/ David G. Bernthal

Name & Title of Judicial Officer                              Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT

I, Sean Prophet, being duly sworn on oath, state as follows:

1. I am a police officer with the Village of Manteno Police Department and have been so employed for five years. I have been a full-time police officer for approximately 13 years. I am currently assigned to the Kankakee Area Metropolitan Enforcement Group (KAMEG) as a Special Agent and was assigned on November 1, 2003.

2. This affidavit is made in the support of the issuance of a criminal complaint and arrest warrant for LANCE A. OLIVER (hereinafter "OLIVER").

3. On August 7, 2005, a KAMEG Confidential Source (C/S) advised that he/she could purchase crack cocaine from "Edo," known to KAMEG Agents as OLIVER, located at 204 Crestlane Rd. Apt. #305 in Kankakee, IL. The C/S had agreed to work with KAMEG agents with the hope of favorable treatment on a pending driving while license revoked offense. This transaction was the first time the C/S as a C/S.

4. The C/S was provided with $80.00 in United States Currency/Official Advanced Funds (USC/OAF) for the purchase. KAMEG Agents transported the C/S to the area of 204 Crestlane Rd. and observed the C/S walk to the front door of 204 N. Crestlane Rd. The C/S met with a male black subject who had a conversation with the C/S. One of the surveillance agents was able to identify the person meeting with the C/S as OLIVER.

5. The C/S and the male black subject then walked into the building and went

upstairs. The C/S remained inside the building for approximately three (3) minutes and then exited the same door he/she entered, returning to a predetermined location.

6. The C/S remained under constant visual surveillance from the time the C/S exited the KAMEG vehicle and entered the residence, as well as exiting the residence and returning to the predetermined location.

7. The C/S did not pick up any objects or come into contact with any person(s) during surveillance. At the predetermined location, the C/S handed KAMEG agents a plastic bag containing suspected crack cocaine.

8. The C/S informed agents that he/she spoke with "Edo" in the front of the building and asked "Edo" for crack cocaine. The C/S stated to agents that "Edo" directed the C/S upstairs with another black male subject. The C/S advised agents that the other black male brought him/her to Apartment #305 inside of building 204. The C/S stated that the black male subject then retrieved the suspected crack cocaine from the back room of the apartment and gave the suspected crack cocaine to the C/S. The C/S advised agents that he/she then gave the black male subject the $80.00 that was previously recorded and provided by KAMEG. The C/S advised that the male black subject told the C/S to come back if he/she wanted more.

9. The C/S was searched for contraband and/or United States Currency both before and after the controlled purchase with negative results.

10. On August 11, 2005, KAMEG agents were en route to execute a Search Warrant at the residence of 204 N. Crestlane Ave., Apt. #305, Kankakee, Illinois. As

2

agents approached the area, OLIVER was observed traveling west bound in a Maroon

Ford Expedition. One KAMEG vehicle turned to relocate the vehicle and observed the

Ford turn southbound on S. Albert Ave. The Ford drove into the 300 Block of S. Albert

and stopped on the east side of the street and parked illegally. Agents then conducted

a traffic stop on the Ford.

11.  As the vehicle was stopped, the remaining KAMEG vehicle was still en

route to the search warrant and the warrant was executed. Agents knocked on the door,

announced their presence by yelling, "Police, Search Warrant," and received no

answer. Agents then forcefully entered the residence and found the residence to be

unoccupied. Shortly after entering the residence, agents at the search warrant advised

the agents on the traffic stop of the Ford that suspected cocaine had been located inside

the residence. OLIVER was then placed into custody.

12.  During the search of the residence, agents located a plastic bag that

contained suspected crack cocaine on a speaker in the bedroom. Agents located a

plastic bag of suspected crack cocaine inside of a white Nike tennis shoe that was

located on the top shelf of the bedroom closet.

13.  Agents located two handguns in between the mattress and box spring of the

bed in the bedroom. A blue steel Taurus 9mm semi-automatic handgun which

contained a magazine with ten (10) round of ammunition and an empty chamber and a

blue steel Wittness .40 caliber semi-automatic handgun (serial number AE14233) that

contained a magazine with six (6) rounds of ammunition with a live chamber. The

3

Taurus handgun had the serial number ground down to bare metal with no numbers visible. Agents located proof of residency in the name of Lance OLIVER in the bedroom in the form of a State of Illinois driver's license, a cleaner's receipt, a claim check from an unknown jewelry store, and mail from an inmate at Dwight Prison. The items of residency were located by agents on the same speaker as one of the plastic bags containing suspected crack cocaine. Agents located two (2) electronic scales and three bags of Apple brand jewelry bags on the kitchen counter.

14. All items of evidence seized by agents were photographed and secured. Agents left a copy of the Search Warrant inside the residence.

15. OLIVER was placed into custody and transported to the Kankakee Co. jail. A search of OLIVER revealed $1,629.00 in United States Currency from OLIVER's left front pants pocket and a plastic bag that contained suspected crack cocaine from OLIVER's right sock. Agents then secured a gray Motorola I730 cellular telephone. OLIVER was provided with a copy of the search warrant by agents leaving the copy in OLIVER's property bag at the jail.

16. Agents performed field tests of the suspected crack cocaine that was seized and a positive result for the presumptive presence was observed. The total amount of suspected crack cocaine seized by agents during the Search Warrant was approximately 67.1 grams and the total amount of suspected cocaine from the person of Oliver was approximately 3.6 grams.

17. On August 12, 2005, a female who identified herself as a friend of OLIVER

4

appeared at the jail and attempted to post $10,000 in cash for OLIVER's bond. The

female provided a Kankakee address that agents later determined does not exist. The

female stated that OLIVER contacted her and asked her if she had any money to

provide for his bond. The female provided conflicting information about the source of

the money, stating that it was from her savings and then later telling agents that it was

from a settlement she received. Agents seized the money and later found all of the $80

provided to the C/S on August 7, 2005.

Further, affiant sayeth not.

S/A s/ Sean Prophet
SEAN PROPHET, Special Agent–KAMEG

Subscribed and sworn to before me this
16th day of August 2005.

s/ David G. Bernthal

DAVID G. BERNTHAL
United States Magistrate Judge

5