E-FILED
Friday, 15 December, 2006  11:22:00 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 CR 20043 |
| v. ) | Chief Judge |
| ) | Michael McCuskey |
| LANCE A. OLIVER, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I.     Testimony From The Bench Trial

    A.     Police Officer Edward Root

He has never been present when crack was being made on the street. (Transcript of Proceedings at 10). He has never made or smoked crack. (Id. At 11). His experience is based entirely on what other people have told him. (Id.) He has had less than an hour of training in identifying crack. (Id. At 12). This trial is the first time he has testified as an expert where the issue was the identification of a substance as crack. (Id. at 13).

Crack is "a smokeable form of cocaine." (Id. at 30,22). Crack cannot be identified by its color because the color can vary. (Id. at 27). Crack can also not be identified by its texture because "the texture of crack can vary just like the color." (Id. at 28). "Crack" gets its name from the crackling sound it makes when it's smoked. (Id. at 29). Crack has a distinct smell but Root can't describe it. (Id. at 24).

Before Root took the stand to testify, the Assistant U.S. Attorney had referred to the Exhibits Root was to identify as "crack". (Id.). The presence of scales and plastic bags does not

help to distinguish between powder cocaine and crack cocaine because they are used with both. (Id. at 31). The same is true with the presence of guns because "violence is associated generally with the drug trade." (Id. at 32-33).

### B. Troy Fuller

He is testifying because he hopes for a reduction in his ten year sentence. (Id. at 41). He has never used crack. (Id. at 42). He continued to make crack even after he pled guilty, while he was still on bond before he started serving his sentence. (Id. at 44).

Crack can come in many different colors. (Id. at 55). While he was on the street, he had no idea of the heavier penalties for crack than for powder. (Id. at 57). Crack has a distinctive smell but Fuller doesn't know what causes it. (Id. at 58). Plastic bags are used to bag both powder and crack. (Id. at 63).

Fuller defines crack as "cooked-up cocaine". (Id. at 68). He thinks freebase is crack: "free-basing, to me, I thought it was just smoking crack." (Id. at 70). He doesn't know how crack got its name, but it does crackle when it's smoked. (Id. at 74). Crack varies in its appearance. (Id.). The color can vary, and the texture can vary. (Id. at 74-75). Crack cannot be identified just by looking at it. (Id. at 77). Crack smells like cocaine, which is present in both powder and crack. (Id. at 78). Scales and bags are used for both powder and crack. (Id. at 81). Fuller lied under oath, when he told the judge in his federal case that he would not engage in any criminal activity while out on bond, because he continued to make crack. (Id. at 85).

### C. John Casale

He agrees that all crack is cocaine base, but "[does] [n]ot necessarily" agree that not all cocaine base is crack. (Id. at 96). However, he has seen sample seized containing cocaine base that were not crack. (Id. at 97). Crack is a slang term, or street name, for the product, not the

process of making that product. (Id. at 98).

Pharmaceutical cocaine base has a melting point of 98 degrees Centigrade. Illicit cocaine has a much lower melting point," sometimes in the order of 84 degrees Centigrade" because of the impurities in it. (Id. at 102). Cocaine hydrochloride is water soluble and has a greasy fell to it; a bad batch of crack has the same feel. (Id. at 103-04). The color of cocaine base comes from the cocaine degrading ro form a new molecule, methyl benzoate. (Id. at 104). Cocaine hydrocloride also has some of the methyl benzoate smell because it is not pure. (Id. at 105). The Exhibits smell "like cocaine". (Id. at 109). The cocaine molecule can degrade into methyl benzoate in either the base form or the hydrochloride from. (Id. at 196).

Crack can be smoked because it has a lower melting point than powder cocaine. (Id. at 114). The process of making crack causes a chemical reaction which frees cocaine base from the hydrochloride formed in powder. (Id. at 120). However, once again, cocaine base is "not always" crack. (Id. at 123). The texture of crack "absolutely" can vary, and it comes in "almost all the colors under the rainbow." (Id. at 124). Just by looking at the Exhibits, Casale cannot state if it can be smoked. (Id. at 126). The crackle sound comes from the water burning off when the substance is smoked. (Id. at 130).

D.  Dr. Michael Evans

He's been qualified as an expert in forensic chemistry in both state and federal courts approximately 200-300 times. (Id. at 142-43). He's been qualified as an expert in forensic toxicology in both state and federal courts several hundred times in the last five years. (Id. at 146). He's converted powder cocaine to crack. (Id. at 142). He's testified as an expert in this Circuit at least three times where the issue was whether a substance was crack. (Id. at 152-53). While he cannot draw the molecular structure of cocaine, he could recognize if he saw a diagram

of it in a textbook. (Id. At 614).

Powder cocaine cannot be smoked. Smoking cocaine makes it "enter the bloodstream very quickly. Almost as quickly as shooting a drug IV", which enhances the rush because it gets to the brain more quickly. (Id. at 167). If you inject powder cocaine, you get the same pharmacological effect you do from smoking crack. (Id. at 173). One cannot rely upon a visual inspection of a substance to conclude that it is not crack because the appearance of crack varies. (Id. at 174). While crack has an odor, it's not distinctive, (Id. at 175).

II.     Applicable Caselaw

Once the smoke has cleared (pun intended), it is apparent from both the testimony at the bench trial, as well as the caselaw, what crack is. Crack is the street name for the form of cocaine which the user can smoke and achieve the physiological and psychotropic effects (a "high" ) more quickly and intensely than snorting, because it is absorbed into the bloodstream much more quickly.

Each witness at the bench trial testified to this definition. Root testified that crack is "a smokeable form of cocaine". Fuller stated that crack is "cooked-up cocaine" which is smoked. Casale testified that crack can be smoked because it has a lower melting point than powder cocaine. Evans stated that smoking crack makes the cocaine enter the bloodstream very quickly, almost as quickly as "shooting" it by IV injection, which enhances the "rush" because it reaches the brain faster. He agreed with Casale that powder cocaine cannot be smoked.

Caselaw is in accord with this evidence. In United States v. Brislane, 367 F. 3d 910, 913, 361 U.S. App. D.C. 287 (2004), the Court of Appeals held that "Congress could hardly have intended to apply the enhanced penalties to forms of cocaine base that are not smokeable or even consumable without further processing. Casale agrees with this definition. (Transcripts at 97).

In <u>United States</u> v. <u>Booker</u>, 10 F. 3d 488, 491 (7th Cir. 1995), Circuit Judge Rovner observed that crack "has a lower melting point than [powder], so it can be smoked without the active ingredient (cocaine) decomposing". The Court also noted that crack "is not actually 'smoked' (it does not produce smoke that is inhaled); rather, it is melted and vapors are inhaled."(<u>Id</u>.) Finally, the Court held that "[i]n 1986, Congress was concerned about the emergence of a new, smokeable form of cocaine." (<u>Id</u>. at 493).

In <u>United States</u> v. <u>Shaw</u>, 936 F. 2d 412. 414 (9th Cir. 1991), the Court of Appeals reiterated that "[b]ecause the melting point of [crack] is much lower than [powder] ... it can be smoked rather than snorted, which allows it to be absorber into the bloodstream much more quickly than [powder]." The court held that "the term 'crack' generally refers to 'very pure cocaine intended for smoking rather than inhalation'." (<u>Id</u>. at 415). The Court also referred to the legislative history, starting that "[c]rack, the street name for cocaine freebase, a preparation of cocaine hydrochloride and sodium bicarbonate, can be smoked and consequently produces intense moments of cocaine 'rush'." (<u>Id</u>. at 416).

Therefore, as it turns out, the identification of crack is subject to a forensic analysis. That analysis involves a simple determination that the melting point of the substance in question is such that it can be smoked (melted) without the cocaine decomposing. If so, it is crack. If not, it is not.

The government's position amounts to nothing more than a tautology; <u>ie</u>, a substance is crack if a drug dealer or police officer looks at it (and / or smells it perhaps), and states that it is crack. The inherently contradictory nature of this position is demonstrated by the fact that each of the witnesses admitted, and the Government concedes, that crack cannot be identified just be looking at the substance in question because crack does not have a distinctive appearance.

(Government's Proposed Findings of Fact and Conclusions of Law at 8, citing United States v. Abdul, 122 F. 3d 477, 479, (7th Cir. 1997).) It varies in terms of color ("almost all the colors of the rainbow", as Casale conceded), as well as texture. See also, United States v. Collins, No. 04 CR 709 (N.D. Il.) (DEA forensic chemist "testified that she would not rely on visual inspection or smell to conclude that a particular substance was "crack.). (Memorandum Opinion and Order dated October 11, 2005 at 6). As Casale eventually conceded, crack does not have a distinctive smell because the odor results from the cocaine molecule degrading into methyl benzoate, which happens with both crack and powder. (Transcript at 196). Of course it is obvious why the Government would champion a system where the "real experts" are convicted drug dealers "working off" their sentences (like Fuller) and experienced drug agents (like Root): only the Government has access to such "experts"! If a defendant tried to call a drug dealer as an expert, he would either take the Fifth or the Government would arrest and charge him on the spot. Nor can a defendant dangle the "incentives" to one in Fuller's position that the Government can. Under this system crack becomes whatever the Government says that it is, and the finder of fact has no standard by which to judge the credibility of the "experts".

Another flaw in this system is that these experts, like each of the witnesses in this case, can only say that substance looks like or smells like crack that they have made or seen. In the past crucial to the resolution of this case is that each witness conceded that he could not state, from looking at or smelling Exhibits 1A, 1B, 1C, that the substance was a form of cocaine which could be smoked without the cocaine decomposing. As demonstrated above, this is what constitutes crack so the Government's proof is fatally deficient.

Parenthetically, it should be noted that this analysis renders the Government's Daubert objection to Dr. Evans' testimony moot because the testimony of the witnesses on

Defendant's contentions is unanimous. As noted Defendant's Trial Brief at 3, "Defendant is <u>not</u> arguing that crack can only be made by using sodium bicarbonate", and that is the only essential point where Dr. Evans' testimony diverged from that of the other witnesses. It is also worth observing that, assuming <u>arguendo</u> that the Court reaches the <u>Daubert</u> issue nevertheless, the Government's objections would apply to Casale as well as Dr. Evans.

Finally, the adage from <u>United States</u> v. <u>Edwards</u>, 397 F. 3d 570, 571 (7th Cir. 2005), that "[a]ll crack is cocaine base but not all cocaine base is crack", remains true. As Casale conceded, cocaine base is crack only if it is "smokeable". (Transcript at 96-97).

III.   <u>Findings of Fact and Conclusion of Law</u>

    A.   <u>Findings of Fact</u>

        1.   Not all cocaine base is crack.

        2.   Crack is cocaine base in a form which can be smoked without the cocaine decomposing.

        3.   Whether the cocaine base is in a form which can be smoked, as described in paragraph 2 above, can be determined by a forensic analysis of the melting point of the substance in question. If it can be melted (smoked) without the cocaine decomposing, it is crack. Otherwise, it is not.

        4.   In this case the only forensic analysis presented by the Government regarding Exhibit 1A, 1B, and 1C, is that they are substances containing cocaine base. For the reasons stated above, this is not sufficient to prove that the Exhibits are crack.

        5.   Although the Government's witnesses concluded that the Exhibits are crack, they did so on the basis of color, texture, and smell. The Court

rejects the conclusion because the witnesses conceded that there is nothing distinctive about crack's color, texture, or smell. In fact, the Government admits that the question of what constitutes crack "does not turn... on its visual appearance". (Government's Proposed Findings of Fact and Conclusions of Law at 8, citing United States v. Abdul, 122 F. 3d 477, 479 (7th Cir. 1997).

6. None of the Government's witnesses testified, and the Government did not offer any proof otherwise, that Exhibit 1A, 1B, and 1C contained a substance that could be smoked without the cocaine decomposing.

B. Conclusion of Law

The Government did not prove beyond a reasonable doubt that the substances possessed by Defendant LANCE OLIVER are crack, as alleged in Counts One and Three of the Indictment and interpreted under 21 U.S.C § 841.

Respectfully submitted,

 s / David C. Thomas
Attorney for Lance A. Oliver

Law Offices of David Thomas
53 W. Jackson Blvd., Suite 1362
Chicago, IL  60604
Telephone: (312) 957-0100
Fax: (312) 957-0111
E-mail: dthomas@kentlaw.edu

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM / ECF system which will send notification of such filing to the following:

    COLIN S. BRUCE,
    Assistant United States Attorney
    United States Attorney
    201 S. Vine St., Suite 226
    Urbana, IL 61802

                            Respectfully submitted,

                            s / David C. Thomas
                            Attorney for Lance A. Oliver

Law Offices of David Thomas
53 W. Jackson Blvd., Suite 1362
Chicago, IL 60604
Telephone: (312) 957-0100
Fax: (312) 957-0111
E-mail: dthomas@kentlaw.edu