E-FILED
Monday, 08 January, 2007  01:22:18 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 05-CR-20043 |
| ) | |
| LANCE A. OLIVER, ) | |
| ) | |
| Defendant. ) | |

## OPINION

A bench trial was held in this case on September 5 and 6, 2006. Pursuant to the stipulation (#34) entered into by the parties, the sole issue for this court to decide is whether the cocaine base possessed by Defendant, Lance A. Oliver, was in the form of "crack," or some other form of cocaine base. This court has carefully reviewed the transcript of the testimony presented at the bench trial (#48), as well as the Government's Proposed Findings of Fact and Conclusions of Law (#51), Defendant's Proposed Findings of Fact and Conclusions of Law (#53), and the Government's Reply (#54). Following this careful review, this court concludes that the Government clearly proved, beyond a reasonable doubt, that the cocaine base possessed by Defendant was in the form of "crack." This court also concludes that Defendant's expert witness, Dr. Michael A. Evans, does not qualify as an expert on "crack" under the standard set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Accordingly, the Government's Combined Objection to Defense Expert and Motion for Daubert Hearing (#41), which was taken with the case, is now GRANTED.

## BACKGROUND

On September 8, 2005, Defendant was charged by indictment with: (1) knowingly and intentionally possessing at least 50 grams of a mixture and substance containing cocaine base

("crack"), a Schedule II controlled substance, with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A); (2) possession of a firearm after having been previously convicted of a crime punishable for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The Government provided Notice (#12) that Defendant was previously convicted of two drug offenses which qualify Defendant for enhanced sentencing pursuant to 21 U.S.C. § 841(b)(1).

On October 19, 2005, Defendant filed a Motion to Suppress Evidence (#13) and a Motion for Evidentiary Hearing Regarding Nature of Alleged Cocaine Seized (#14). A hearing was held on the Motion to Suppress on November 30, 2005. Following the hearing, a briefing schedule was set. This court also granted Defendant's Motion for Evidentiary Hearing and scheduled the evidentiary hearing for March 15, 2006, at 10:30 a.m.

On January 9, 2006, the Government filed a Motion to Reconsider (#18), asking this court to reconsider its decision to hold an evidentiary hearing, prior to trial, on the issue of the nature of the cocaine seized. The Government renewed its argument that a pre-trial evidentiary hearing to determine the nature of the substance in question is legally improper. The Government further renewed its argument that Defendant's motion was based upon an incorrect premise. The Government also noted that this court had denied a motion for an identical evidentiary hearing in <u>United States v. Billings</u>, Case No. 05-20041.

On January 24, 2006, Defendant filed his Response to the Government's Motion to Reconsider (#20), and supporting Exhibits (#21). Defendant first stated that he "agrees that it's not necessary to hold an evidentiary hearing in the case at bar." Based upon this concession by Defendant, this court entered an Opinion (#24) on January 25, 2006, which granted the

Government's Motion to Reconsider (#18) and vacated the scheduled evidentiary hearing.

In its Opinion, this court also noted that the Seventh Circuit has long held that crack is one of several forms of cocaine base and that the enhanced penalties included in the applicable statutes and guidelines apply only to the crack form of cocaine base. See United States v. Abdul, 122 F.3d 477, 478 (7th Cir. 1997); United States v. Reddrick, 90 F.3d 1276, 1282 (7th Cir. 1996); United States v. Booker, 70 F.3d 488, 494 (7th Cir. 1995). The Seventh Circuit has also long held that "those who smoke, buy, or sell this stuff [crack cocaine] are the real experts on what is crack." United States v. Earnest, 185 F.3d 808, 812 (7th Cir. 1999), quoting United States v. Bradley, 165 F.3d 594, 596 (7th Cir. 1999); see also United States v. Linton, 235 F.3d 328, 330 (7th Cir. 2000) ("testimony of witnesses familiar with crack, combined with direct evidence that the substance had the appearance of and was packaged like crack, is sufficient to satisfy the government's burden of proof and permit a district court to conclude that a defendant possessed crack").

This court therefore stated that it concluded that the Seventh Circuit's decision in United States v. Edwards, 397 F.3d 570, 574 (7th Cir. 2005), did not change any of this well established law. This court noted that, in Edwards, the defendant pleaded guilty to two counts of possession with intent to distribute more than 50 grams of a substance containing cocaine base, while reserving his right to contest the nature of the substances involved. Edwards, 397 F.3d at 572. United States District Judge Milton A. Shadur deferred accepting Edwards' guilty pleas until after a subsequent hearing was held regarding the nature of the substances. After hearing expert testimony, Judge Shadur concluded that the substances in Edwards' possession were a noncrack form of cocaine base. Edwards, 397 F.3d at 573. Judge Shadur then concluded that the statutory mandatory minimum applied to all forms of cocaine base, not just crack, and imposed two concurrent ten-year terms of

3

imprisonment. Edwards, 397 F.3d at 573.

On appeal, the Seventh Circuit reaffirmed its earlier ruling in United States v. Booker, 70 F.3d 488 (7th Cir. 1995), that "for purposes of the enhanced penalties in the Guidelines and the statutes 'cocaine base' means 'crack cocaine.'" Edwards, 397 F.3d at 572 (emphasis in original), citing Booker, 70 F.3d at 489-90, 494. Therefore, because Judge Shadur made a factual finding that Edwards possessed noncrack forms of cocaine base, the Seventh Circuit concluded that the sentences imposed based upon mandatory minimum set out in the statute for "cocaine base" had to be reversed. Edwards, 397 F.3d at 577. The Seventh Circuit therefore reversed and remanded the case for resentencing. Edwards, 397 F.3d at 577.

Following this court's careful review of the Edwards decision, this court found no support for Defendant's argument that the Government cannot prove the substance at issue in this case is crack cocaine without forensic analysis. This court stated that the decision in Edwards did not call into question the long line of decisions which hold that evidence from witnesses familiar with crack is sufficient. In fact, in United States v. Cannon, 429 F.3d 1158 (7th Cir. 2005), the Seventh Circuit rejected an argument based upon Edwards. In Cannon, the defendant stipulated at trial that the substance at issue was "cocaine base (crack)." Cannon, 429 F.3d at 1160. The Seventh Circuit noted that Cannon's appellate lawyer argued that "Cannon and trial counsel may not have appreciated that there are varieties of cocaine base other than crack." Cannon, 429 F.3d at 1160. However, the Seventh Circuit concluded that "Cannon surely knew whether his own inventory was 'crack.'" Cannon, 429 F.3d at 1160. This court therefore concluded, based upon case law from the Seventh Circuit, that a defendant may plead guilty to possessing crack cocaine, may stipulate that the substance is crack cocaine at trial, or may be found guilty by a jury of possessing crack cocaine,

4

all without the need for forensic analysis to test for crack.

On March 2, 2006, this court entered another Opinion (#27) which denied Defendant's Motion to Suppress Evidence. This court agreed with the Government that the search warrant was properly issued in this case and that, in any case, the police officers relied upon the warrant in good faith. This court further found that Defendant was properly stopped and arrested.

Subsequently, the Government and Defendant orally agreed to proceed by way of a bench trial. On July 24, 2006, they filed a written Waiver of Jury Trial and Stipulations for Bench Trial (#34). The parties thereby stipulated that, as to Count 1, the Government could prove beyond a reasonable doubt that: (1) Defendant knowingly possessed over 50 grams of cocaine base; (2) Defendant possessed the cocaine base with the intent to distribute it; and (3) Defendant knew the substance was a controlled substance. Defendant did not stipulate, however, that the cocaine base possessed by Defendant was in the form of "crack." As to Count 2, the parties stipulated that the Government could prove beyond a reasonable doubt all of the elements of the offense of possession of a firearm by a felon. As to Count 3, the parties stipulated that the Government could prove beyond a reasonable doubt all of the elements of the offense of possession of a firearm in furtherance of a drug trafficking crime.

On August 28, 2006, the Government filed its Combined Objection to Defense Expert and Motion for <u>Daubert</u> Hearing (#41). The Government stated that it objected to the testimony of the defense expert, Dr. Michael Evans. The Government argued that the testimony it expected Dr. Evans to provide would not meet the test for admissibility under <u>Daubert</u>.

## BENCH TRIAL

The agreed upon bench trial commenced on September 5, 2006. The parties agreed that this

court should take the Government's Motion (#41) with the case. The Government presented the testimony of Edward Root, Troy Fuller, and John Casale. Root testified that he is a detective with the Decatur Police Department and has been assigned to narcotics enforcement for 17½ years. He testified that he has held crack cocaine when out on the street several thousand times. Defendant did not object to qualifying Root as an expert, and this court qualified Root as an expert in drug identification, cocaine and crack trafficking, and crack identification. Based upon his experience, Root testified that the 52.9 grams of cocaine base that Defendant previously stipulated that he possessed was crack cocaine.

Fuller testified that he is currently in the Federal Bureau of Prisons. He testified that he pled guilty to federal charges in September 2003 pursuant to a plea agreement and that he had also entered into a cooperation agreement. Fuller testified that he made crack cocaine a few times a week for years and described himself as a "good crack cook." He described the process for cooking crack cocaine and stated that he has probably handled crack cocaine more than 1,000 times. Fuller testified that he did not always make crack with baking soda. Defendant did not object, and this court qualified Fuller as an expert on crack manufacturing and distribution and identification. Fuller identified the substance possessed by Defendant as crack.

Casale testified that he is a chemist and works for the Drug Enforcement Administration at the DEA Special Testing and Research Laboratory in Dulles, Virginia. He testified that he is considered to be the international expert on cocaine for the lab. He testified that he has manufactured crack in the lab for dissemination as a training aid to various law enforcement agencies and has also observed drug traffickers make crack. Defendant had no objection, and this court qualified Casale as an expert on cocaine and crack manufacturing. Casale described the

6

process used to manufacture crack. Casale testified that he has made crack using baking soda, baking powder and household ammonia and that he has observed crack manufacturers making crack using all of these substances. Casale testified that the substance possessed by Defendant was crack cocaine.          The bench trial resumed on September 6, 2006, and Defendant presented the testimony of Dr. Michael Evans. Evans testified that he received his Ph.D. in 1974 in toxicolgy. He testified regarding his work history and stated that, in 1989, he founded AIT Laboratories and is currently the president and CEO of the company. Evans testified that his company employs about 80 people and performs forensic toxicology analysis for courts, law enforcement agencies, medical examiners and coroners. He testified that he has made crack and had been qualified previously in court as an expert in forensic chemistry. Defense counsel then tendered him as an expert in forensic chemistry as well as forensic toxicology. On cross-examination by the Government regarding his qualifications, Evans had very little recollection regarding any of his previous testimony on the subject of the analysis of cocaine base or crack. He also testified that most of his testimony in court did not involve the issue of crack cocaine and that his work for federal agencies did not involve crack. He testified that he has never observed anyone make crack cocaine on the street. In answering a question from this court, Evans stated that he would not say that crack manufactured using his laboratory process is what they sell on the street. He also testified that he has never personally analyzed a sample of street crack and has never published an article regarding the analysis of a street sample of cocaine base.     Following this testimony, the Government objected to Evans being called to testify regarding whether or not a street sample of cocaine base is crack. This court reserved ruling and allowed defense counsel to proceed. Evans then testified that crack cocaine is a form of base cocaine made using a bicarbonate. Evans testified that this definition was

based on a publication from the National Institute of Drug Abuse he obtained from the internet which stated that crack cocaine "is processed with an ammonium or sodium bicarbonate (baking soda) and water and heated to remove the hydrochloride." Evans testified that the publication he quoted was talking about ammonia bicarbonate or sodium bicarbonate. Evans indicated that crack cocaine must be made using a bicarbonate, either sodium or ammonium bicarbonate. Evans testified that, in his opinion, you cannot rely on a visual inspection to determine if a substance is crack. He testified that he could not identify the cocaine base possessed by Defendant as crack. On cross examination, Evans testified that "you cannot make the positive assertion that it is crack if there's no bicarbonate there." He clarified that "[t]hat doesn't mean it's not crack, but you can't make the positive assertion it is crack for forensic purposes."

The Government then called Casale as a rebuttal witness. Casale testified that he has never heard of ammonium bicarbonate, indicating that such a compound does not exist. Casale also testified that the publication referred to by Evans is not a peer-reviewed or scientific journal and that he would not rely on it for any type of scientific conclusions.

## ANALYSIS

In its Proposed Findings of Fact and Conclusions of Law (#51), the Government argued that an examination of Evans' testimony and qualifications can only lead to the conclusion that Evans is not an "expert" on crack identification under Daubert, nor was his testimony relevant to the issue since it was based upon his own definition of crack. The Government pointed out that the Seventh Circuit has expressly found that crack is not exclusively manufactured using sodium bicarbonate, citing Abdul, 122 F.3d at 479. In Abdul, the Seventh Circuit noted that the United States Sentencing Guidelines define crack as "the street name for a form of cocaine base, usually prepared by

processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." Abdul, 122 F.3d at 479. The Seventh Circuit stated, "[i]f courts were to disregard the qualifying term 'usually,' crack dealers could avoid the penalties for distribution of crack by merely finding some substitute for baking soda in production, or by crushing the rocks so that the final product resembles powder." Abdul, 122 F.3d at 479.

The Government further pointed out that, as recognized by this court in its earlier Opinion, the Seventh Circuit does not require forensic analysis but has defined the issue as whether an individual familiar with crack can recognize the cocaine base as crack. Therefore, the "experts" on whether cocaine base is crack are crack dealers, crack users and experienced drug agents familiar with crack on the street. See United States v. Anderson, 450 F.3d 194, 301 (7th Cir. 2006). The Government therefore contended that the evidence it presented during the bench trial was sufficient to establish beyond a reasonable doubt that the cocaine base possessed by Defendant was crack. The Government argued that this court should find Evans' testimony inadmissible under Daubert and find Defendant guilty of all charges beyond a reasonable doubt.

In his Proposed Findings of Fact and Conclusions of Law (#53), Defendant stated that he is not arguing that crack can only be made by using sodium bicarbonate. Instead, Defendant responded to the Government's arguments by pointing out that case law has recognized that crack is a smokeable form of cocaine and that all of the witnesses who testified at the bench trial stated that crack can be smoked. Even though this court had already ruled in this case that forensic analysis is not necessary to test for crack, Defendant argued:

> Therefore, as it turns out, the identification of crack is subject
> to a forensic analysis. That analysis involves a simple determination

9

>> that the melting point of the substance in question is such that it can be smoked (melted) without the cocaine decomposing. If so, it is crack. If not, it is not.

Defendant contended that, because the Government did not prove that the cocaine base possessed by Defendant "contained a substance that could be smoked without the cocaine decomposing," the Government did not prove beyond a reasonable doubt that the substances possessed by Defendant were crack. Defendant provided absolutely no case law authority for this rather remarkable proposition. This court notes that Defendant did cite cases which recognize that crack is a smokeable form of cocaine. However, none of the cases cited even suggest that Defendant's proposed method would be the only way to prove that a substance was crack.

In its Reply, the Government noted Defendant's complete lack of supporting authority. The Government argued that Defendant's lack of supporting cases was understandable considering that Defendant's proposed definition of crack is <u>not</u> the definition of crack used by the Seventh Circuit. The Government argued that limiting the definition of crack to a substance with a certain melting point, or a certain cocaine decomposition percentage, "would allow 'crack' manufacturers and distributors to frustrate the intention of Congress merely by altering the manufacturing process and producing a product with a slightly higher or lower melting point." The Government contended that the problems created by a narrow "melting point" definition are similar to the problems the Seventh Circuit recognized in <u>Abdul</u> which would be created if the definition of crack was limited to a substance manufactured using baking soda. See <u>Abdul</u>, 122 F.3d at 479.

The Government also again argued that this court should find that Evans does not qualify as an expert on crack. The Government noted that Evans has all but conceded his lack of

qualifications in a letter sent to this court following the bench trial. This letter (#52) was sent by Evans to this court and was received on December 11, 2006.[1] In his letter, Evans stated that "[o]ver these past two years I have provided laboratory & consulting services in a number of Federal cases involving Crack Cocaine. Unfortunately I can no longer continue to provide services in these cases." Evans then listed the reasons he would no longer be providing these services, and stated:

> Over the past 6 months it has become evident to me that the issues I am addressing in these cases is no longer a scientific issue but one of legal definition. I am a scientist & I value my time. In the past few cases my time has been of no value to the defendant, the courts, or my corporation or me.

The Government further argued that this court should find that Fuller, Root and Casale all qualify as experts on the identification of crack and should find Defendant guilty of all charges beyond a reasonable doubt.

As previously noted, this court has carefully reviewed the record in this case and the arguments of the parties. As far as Evans' testimony, this court concludes that Evans failed to show that he was qualified to render an expert opinion regarding whether the substance was crack cocaine. Rule 702 of the Federal Rules of Evidence, in conjunction with the Supreme Court's decision in Daubert, govern the admissibility of expert testimony in federal court. See Naeem v. McKesson Drug Co., 444 F.3d 593, 607 (7th Cir. 2006). Under Daubert, this court must function as a "gatekeeper" to "ensure the reliability and relevancy of expert testimony." Naeem, 444 F.3d at 607, quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). The Seventh Circuit has stated that

---

[1] A copy of this letter has been attached to this Opinion as Exhibit A.

"experts' work is admissible only to the extent that it is reasoned, uses the methods of the discipline, and is founded on data." Naeem, 444 F.3d at 608, quoting Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 924 (7th Cir. 2000).  In this case, Evans based his opinion on a definition of crack he obtained from a publication on the internet.  Casale testified, and Defendant does not dispute, that this publication was not a peer reviewed or scientific journal.  This court therefore agrees with the Government that Evans' testimony did not meet the requisite level of reliability.  See Naeem, 444 F.3d at 608.

This court further concludes that Evans' testimony does not meet the relevancy standard under Daubert.  In fact, after reviewing the transcript of Evans' testimony, this court concludes that his testimony was completely without value as to the issue before this court.  This court further agrees with the Government that the letter Evans sent to this court bolsters the Government's arguments regarding his testimony, as well as this court's conclusion.  Evans has specifically stated that his "time has been of no value to the defendant, the courts, or my corporation or me."

For the reasons stated, this court agrees with the Government that Evans' testimony is not admissible under Daubert.  Accordingly, the Government's Combined Objection to Defense Expert and Motion for Daubert Hearing (#41) is GRANTED.

This court, however, finds that the Government's witnesses, Root, Fuller, and Casale, were all knowledgeable and credible witnesses.  This court further concludes that these witnesses were properly qualified as experts under Daubert because their testimony was shown to be reliable, based upon their training and experience, and was also relevant to the issue before the court.  Based upon the applicable Seventh Circuit case law, their testimony that the substance possessed by Defendant was crack was more than adequate to prove beyond a reasonable doubt that Defendant possessed

crack. Therefore, this court specifically finds that the cocaine base possessed by Defendant was in the form of "crack."

Based upon this court's finding that Defendant possessed crack and the stipulations entered into by Defendant and the Government, this court finds Defendant guilty, beyond a reasonable doubt, of the offenses charged in all three counts of the indictment.

IT IS THEREFORE ORDERED THAT:

(1) The Government's Combined Objection to Defense Expert and Motion for <u>Daubert</u> Hearing (#41) is GRANTED.

(2) Based upon the relevant evidence presented, this court finds that the Government proved, beyond a reasonable doubt, that the cocaine base possessed by Defendant was in the form of "crack."

(3) Based upon this court's finding and the stipulations entered into by Defendant and the Government, this court finds Defendant guilty, beyond a reasonable doubt, of the offenses charged in all three counts of the indictment.

(4) This case remains scheduled for a status conference, by personal appearance, on January 26, 2007, so that this court's finding of guilty can be made in open court. This court will set a sentencing date at the status conference.

ENTERED this 8th day of January, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

## AIT Laboratories
AMERICAN INSTITUTE OF TOXICOLOGY

E-FILED
Monday, 11 December, 2006  01:19:58 PM
Clerk, U.S. District Court, ILCD

RECEIVED
DEC 0 7 2006
U.S. DISTRICT JUDGE
URBANA, ILLINOIS

12/01/06

Exhibit A

Re:    Crack Cocaine Cases

To all this may concern:

Over these past two years I have provided laboratory & consulting services in a number of Federal cases involving Crack Cocaine. Unfortunately I can no longer continue to provide services in these cases. The reasons for this are several-fold to include:

1. In this last year I have had to bad debt a significant dollar amount (>$25,000) in a number of these cases. This dollar figure is more than 10 fold the amount of bad debt the corporation has posted over the previous 10 years of operation. The explanation for the failure of payment generally involves a dollar limit granted to the defense in the case or, in some cases, just a plain refusal by the attorney to pay for the services. Unfortunately this loss of dollars does represent a significant and unacceptable loss of revenue to both AIT Laboratories and the employees of the corporation.

2. While I could continue providing laboratory services in these cases, I can no longer provide consulting services (i.e., court testimony) often required in these cases due to the growth of the corporation, AIT Laboratories now employs over 100 FTE & as President & CEO I have, as my primary responsibility, the care & continued employment of these employees.

3. Over the past 6 months it has become evident to me that the issues I am addressing in these cases is no longer a scientific issue but one of legal definition. I am a scientist & I value my time. In the past few cases my time has been of no value to the defendant, the courts, or my corporation or me.

I trust you understand my reasons for this action. Thank you

Sincerely

Michael A. Evans, Ph.D.
*President & Chief Executive Officer*

2265 Executive Drive, Suite A   •   Indianapolis, Indiana 46241
Telephone: (317) 243-3894   •   Fax: (317) 243-2789   •   Website: www.aitlabs.com